## Díaz Caneja *v.* Rossy.

### Appeal from the District Court of Mayagüez.

No. 50.—Decided June 4, 1906.

Appeal—Evidence—Bill of Exceptions—Statement of Facts.—In order that the Supreme Court may consider on appeal the evidence taken at the trial, it is necessary that the same be set forth in a bill of exceptions or a statement of facts.

Id.—Transcript of Record—Documents Accompanying Complaint.—Where a party seeks to make use on appeal, documents which have been made a part of the complaint in accordance with the provisions of section 119 of the Code

of Civil Procedure, must be duly identified in the transcript presented to the Supreme Court in order that the appellate court may know what documents really accompanied the complaint and which were introduced in evidence during the trial.

PLEADING—PRESCRIPTION.—Prescription must be specifically alleged.

The facts are stated in the opinion.
*Mr. Hernández López* for appellant.
The respondent did not appear.
MR. JUSTICE WOLF delivered the opinion of the court.

Don Manuel Díaz Caneja, in his capacity as collector of chaplaincies in this bishopric, filed a suit against Pedro María Rossy y Guerra, and the action brought by the complainant had two objects; first, that the defendant Pedro María Rossy y Guerra, be adjudged to pay the sum of $450 as arrears of pensions or interest proceeding from an annuity or annual charge of 100 *pesos;* and another of 650 *pesos,* both of which charges are imposed upon a landed property, situated at the place "El Real," in the jurisdiction of San Germán, and consisting of 55 *cuerdas* of land comprised between the points and boundaries set forth in the deed by which said charges were constituted on the aforesaid landed property; and second, that said defendant be also required to pay or return the principal or capital of the annuity, amounting to the said sum of $750 Spanish *pesos,* so as to redeem the annuity referred to, and besides, the costs that may be caused by the proceedings.

The facts of the complaint are as follows:

"That in the year 1800, Don Felipe Quiñonez and Don Enrique Ortiz, constituted two chaplaincies, one for 650 *pesos,* Spanish money, as may be seen from the deeds attached thereto, numbered 2 and 3, and for which chaplancies (the persons constituting the same) should pay 5 per cent annually as revenue.

"That by a public deed executed in the town of San Germán on the 14th of May, 1831, Don José Monserrate Ramírez, and his wife, Doña Ramona Quiñonez, acknowledged the principal (capital) of the chaplaincy, amounting to 650 *pesos,* Spanish money, binding themselves to pay the revenues from the same at 5 per cent per annum,

binding their property, and specially mortgaging an estate belonging to them in the place known as "El Real," within the jurisdiction of San Germán, composed of 55 *cuerdas,* being bounded as set forth in the deed, which is also attached here under page 3.

"That by a deed executed in the said village of San Germán, before Don Ramón Santaella, acting as keeper of archives during the illness of the notary public, Don Estéfano Gregory, acquired the estate with the *censo* and tribute in favor of the sacred mitre, with interest at 5 per cent, paying said interest until the year 1878.

"That the said annuity was recorded in the Register of Mortgages of Porto Rico, and was also recorded in the Register of Property of San Germán on the 1st of October, 1894.

"That the result of the liquidation is that in the year 1878, neither Don Estéfano Gregory nor his heirs, nor the present owner of the estate, Don Pedro María Rossy y Guerra, have paid any revenue whatever owing therefore the sum of $450, American gold, up to the 31st of December last, for unpaid revenues.

"That the present owner, Don Pedro María Rossy, being sued in a conciliatory action, he refused absolutely to settle, the proceedings being terminated without an agreement being reached."

The defendant's answer is as follows:

"Ignacio Hidalgo y Domingo, attorney for Don Pedro María Rossy, a resident of San Germán, in the suit prosecuted against him by Mr. Manuel Díaz Canejas, for the collection of money, draws up the following answer to the complaint:

"Mr. Manuel Díaz Canejas, in his capacity as collector of chaplaincies of the bishopric, and through his attorney, Mr. Juan Quintero, presents a complaint against Mr. Pedro María Rossy to obtain the payment of $450 for revenue due on an annuity of 750 *pesos*, Spanish money, as also that he return the last named amount to redeem the said annuity.

"Mr. Pedro María Rossy, the present owner of the Estate "El Real," bought the same from Don Quillermo Santos y de la Mano, in the year 1891, free from encumbrances, in favor of the chaplaincies, according to the record of the registrar which was issued in the same year to the court of this city, when the proceedings in regard to the said property, 'El Real,' were had upon which the title was made.

"It appears strange to counsel that now Mr. Pedro María Rossy should owe any amount whatever on account of chaplancies when the

estate which he bought of Mr. Santos was not affected by any encumbrance, it so appearing from the certificate of the registrar.

"For the facts stated, I deny the facts on which the complaint is based, praying the honorable judge to dismiss the same, adjudging the costs against Mr. Díaz Caneja, believing this to be justice.   Mayagüez, August 12, 1904.—Ignacio Hidalgo, attorney for the defendant."

The plaintiff then filed a demurrer to the answer bearing date August 23, 1904, alleging substantially that the defendant had not set forth sufficient facts to constitute a defense and that the answer was ambiguous and vague.   It was also stated that the denials of the allegations of the complaint should have been specific and that the complaint being sworn to the answer should have been verified also.   Judgment on the complaint was also prayed.   It does not, however, appear in the record that the complaint was verified, but the court went on to the trial of the case on the 28th day of February, 1905, without the record showing any disposition of the demurrer.   On the 10th of April, 1905, the court pronounced judgment against the complainant, who has appealed to this court.

In the argument before us and in the brief of the appellant questions of prescription were discussed and other matters were presented involving the transfer of inscription of the annuities from the books of the old mortgage registrar to the books of the new and also whether the property the defendant claims was properly identified or not.   The record presented to us, however, does not satisfy us that any of the questions presented were properly before the court below. While it does not appear from the record that the demurrer to the answer was disposed of, yet it is perfectly clear that that the answer was insufficient, vague and ambiguous.   There is no general denial of the plaintiff's allegations contained therein.   It apparently admits the facts of the complaint and thereafter by reference to some preceding statement attempts to deny such facts.

On the other hand there was a trial below and the court considered that the defendant had some defenses. There is no bill of exceptions or statement of facts in the record and various writings are found in the transcript which form part of the complaint. It would be impossible for us to review the evidence without one of the modes of certification which the Code of Civil Procedure prescribes. The writings to which the complaint refers and which the answer admits we have considered as being annexed to the complaint although the deeds referred to do not bear the numbers mentioned in the complaint. Where it is proposed to rely upon writing documents forming part of the complaint by virtue of section 119 of the Code of Civil Procedure, some identification of such instruments as have been annexed to the complaint should appear in the transcript which is brought before us, in order that we may know what papers are ectually annexed, and what merely offered in evidence at the trial.

We cannot find from the record that there was any real issue between the parties. It would seem for example that by section 128 of the Code of Civil Procedure the statute of limitations should be specially pleaded. In the best interest of justice the parties should be sent back to the district court in order that the case may be tried with the issues clearly defined.

We deem it unnecessary to allude to the other matters discussed by the parties because they are not properly presented. The case must be reversed and sent back to the district court of Mayagüez with instructions to permit the defendant to file an amended answer or take such other steps as he may be advised.

*Decided accordingly.*

Chief Justice Quiñones, and Justices Hernández, Figueras and MacLeary concurred.